# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BOYD, et al.,<br><br>                        Plaintiffs,<br><br>vs.<br><br>CITY OF OCEANSIDE POLICE DEPT., et al.,<br><br>                        Defendants. | Civil No.    11cv3039 LAB (WMc)<br><br>**ORDER SUA SPONTE DISMISSING THIRD AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM AND FOR SEEKING MONETARY DAMAGES AGAINST IMMUNE DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2)** |

## I. PROCEDURAL HISTORY

Charles Boyd ("Plaintiff"), formerly detained at the Robert Presley Detention Center in Riverside, California, and proceeding pro se, initiated this civil rights action, filed pursuant to 42 U.S.C. § 1983, on December 29, 2011.[1]

On March 23, 2012, the Court granted Plaintiff leave to proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), but simultaneously dismissed his Complaint for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2) and 28

---

[1] Plaintiff also filed an identical action in San Diego Superior Court which was removed to this Court by Defendants on March 15, 2012. *See Boyd v. Oceanside Police Dep't.*, S.D. Civil Case No. 12cv0652 LAB (WMc). That action has since been dismissed and Plaintiff was directed to proceed with his claims in this action.

U.S.C. § 1915A(b) (ECF Doc. No. 4.)  Plaintiff was granted leave to amend, and has done so on two occasions since; however, both Plaintiff's First and Second Amended Complaints suffered from the same or similar deficiencies as his original pleading, and were likewise dismissed pursuant to 28 U.S.C. § 1915(e)(2).  *See* Oct. 11, 2012 Order (ECF Doc. No. 13); March 26, 2013 Order (ECF Doc. No. 18).

Plaintiff's Third Amended Complaint (ECF Doc. No. 20), which is ostensibly his *fourth* attempt at pleading a plausible claim for relief under 42 U.S.C. § 1983, is now before the Court for sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2).  Plaintiff's Third Amended Complaint fares no better than his previous pleadings, however.  Thus, the Court finds, for the reasons discussed below, that it too must be dismissed for failing to state a claim and for seeking damages against defendants who are immune pursuant to 28 U.S.C. § 1915(e)(2), and that this entire action must be dismissed without further leave to amend.  *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2011) (noting that district court need not grant leave to amend when further attempts "would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.") (citation omitted).

**II.   SCREENING PER 28 U.S.C. § 1915(e)(2)**

    **A.   Standard of Review**

As Plaintiff is aware, the Prison Litigation Reform Act ("PLRA") obligates the Court to review his pleadings because he is proceeding IFP and to sua sponte dismiss them, or any portion of them which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune.  *See* 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").[2]

/ / /

---

[2] Because Plaintiff was a "prisoner" as defined by 28 U.S.C. § 1915(h) at the time he initiated this action, his original complaint was also dismissed pursuant to 28 U.S.C. § 1915A(b). *See Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED.R.CIV.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not, in so doing, "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

### B.   Plaintiff's Third Amended Complaint

As an initial matter, the Court notes that Plaintiff has waived all previous claims not re-alleged in his Third Amended Complaint against parties no longer identified as Defendants. *See* ECF Doc. Nos. 4, 13, 18, citing *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

In his most recent pleading, Plaintiff alleges four separate causes of action: 1) Fourth Amendment violations related to the validity of his June 30, 2011 arrest which he claims was based on an "invalid" warrant (TAC ¶¶ 57-58); 2) Fourteenth Amendment "due process" and

"excessive force" claims arising during the course of that same arrest and transport from San Diego to Riverside, (*id.* ¶¶ 59-61); 3) a conspiracy to deny him equal protection in violation of 42 U.S.C. § 1985, (*id.* ¶¶ 62-63); and 4) violations of the "Domestic Terrorism Act" as "amended by the USA Patriot Act, Title 28 U.S.C. § 2331." (*Id.* ¶¶ 1, 64.) The following parties are currently named as Defendants: Frank McCoy, Chief of the Oceanside Police Department ("OPD"); unidentified OPD Officers 1-100; Tom Aguigui, OPD Captain of Field Operations; Summer Stephan, Chief of the North San Diego County District Attorney's Office; Bonnie Dumanis, San Diego District Attorney; Drew Bedell, FBI Agent, North San Diego County; unidentified OPD SWAT Team 10 Officers; Kristen Buie, Riverside County Deputy District Attorney; and Does 1-100, who are unidentified Vista Sheriff's Department Deputies.

### C.    42 U.S.C. § 1983 & 1985

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) (quoting *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989)).

To state a claim for conspiracy under the Ku Klux Klan Act, 42 U.S.C. § 1985, Plaintiff must allege: "(1) a conspiracy, (2) to deprive any person or a class of persons the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). "[T]he language requiring intent to deprive *equal* protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102; *see also Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998). Conclusory allegations will not suffice. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (affirming dismissal of § 1985(3) claim containing "legal conclusions but no

specification of any facts to support the claim of conspiracy"). Indeed, allegations of conspiracy, like any other claim for relief, must meet the *Iqbal* pleading standard, and as such, must include facts sufficient to show facial plausibility by "defin[ing] the scope of any conspiracy . . ., what role [a conspirator] had, or when or how the conspiracy operated." *Lacey v. Maricopa County*, 693 F.3d 896, 937 (9th Cir. 2012) (en banc); *Iqbal*, 556 U.S. at 679.

In his Third Amended Complaint, Plaintiff alleges OPD officials McCoy and Aguigui "gave the order and allowed the unlawful entry" into his parents' residence at 4781 Stephanie Place in Oceanside, California, on June 30, 2011, after an "almost six hour standoff" in order to execute an arrest warrant he claims was "fraudulently issue[d]" by Riverside County District Attorney Buie, together in "conspiracy" with San Diego District Attorneys Dumanis and Stephan, based on the "mistaken belief that [he,] an African American male[,] was a primary suspect in an officer[-]involved shooting in Riverside County." (TAC ¶¶ 3-7, 23.)

Plaintiff further contends Defendant OPD Officers Does 1-100 and OPD SWAT Team 10 Officers "attempt[ed] to murder [him]," by "terrorizing," beating, and tazing him during his arrest (*id.* ¶¶ 4, 8-12); however, he later admits the persons "he thought were OPD Officers Does 1-100 and Oceanside SWAT Team 10 Officers," were *actually* employees of "Malinda's Investigative Professional Services," a "bail enforcement company, hired by ... Buie to bring [him] into custody." (*Id.* ¶ 13.)[3] Nevertheless, Defendants McCoy, Aguigui, OPD Officers Does 1-100, and OPD SWAT Team 10 Officers, are alleged to have in some way "assisted and allowed [the] illegal break-in." (*Id.* ¶ 25.)

///

---

[3] Plaintiff's previous attempts to sue Malinda's Professional Investigative Services, its employees Benjamin Curtis Conway, Malinda Kay Click, Malinda Kay Curtis, and Absolute Bonding Corporation based on their involvement in his arrest were dismissed on October 11, 2012 for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2). *See* Oct. 11, 2012 Order [ECF Doc No. 13] at 4. While Plaintiff was granted leave to amend, he waived any claims against those parties by failing to re-allege them in his Second Amended Complaint, and they have been dismissed. *See* March 26, 2013 Order [ECF Doc. No. 18] at 2. Even so, the Ninth Circuit has found that bounty hunters and bail bond agents are *not* state actors acting under color of state law for purposes of Section 1983. *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 558 (9th Cir. 1974) (en banc); *see also United States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009); *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204-206 & nn. 3-5 (5th Cir. 1996). "[T]he bail bondsman is in the business in order to make money and is not acting out of a high-minded sense of devotion to the administration of justice." *Ouzts*, 505 F.2d at 554–55.

As for Defendant District Attorneys Dumanis, Stephan, and Buie, Plaintiff alleges they all conspired to issue a "fraudulent bench warrant" which "accuse[d] him of something he did not do, like shooting a police officer[,] in order to effectuate [his] arrest and to detain and or arrest Deborah Holmes."[4]  (TAC ¶¶ 43-45.)

First, to the extent Plaintiff contends OPD officials McCoy and Aguigui, in their capacities as Chief of Police and Captain of Field Operations, are liable for violating his rights because they are "responsible for the management and control" of the OPD, and "familiar with the process for executing out of county warrants" (TAC ¶¶ 40, 42), his allegations fail to include the type of "factual content" sufficient to show the direct causal connection between their personal acts or omissions on June 30, 2011 and any violation of his constitutional rights. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). There is no respondeat superior liability under 42 U.S.C. § 1983. *Id.*; *see also See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (under no circumstances can a defendant be held liable solely because he is responsible for the actions or omissions of another).

Moreover, to the extent Plaintiff alleges McCoy and Aguigui both "gave ... order[s]" based on an arrest warrant and a "mistaken belief that [he] ... was a primary suspect in an officer[-]involved shooting in Riverside County," (TAC ¶¶ 4, 7), he still fails to allege a plausible entitlement to relief–for an arrest pursuant to a facially valid warrant does not establish a constitutional violation. *Baker v. McCollan*, 443 U.S. 137, 144 (1979); *Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991).  Officers are entitled to rely on an issuing judge's decision that probable cause exists, and are shielded from any liability relating to the arrest if

---

[4] Plaintiff describes Deborah Holmes as his "associate," and attempts to "add[] [her] as a Plaintiff," because she, too, is African American and was "followed, chased," "pulled over" and detained by OPD Officers Does 1-100 for two hours on June 30, 2011, while "on her way to report a crime that took place at 4781 Stephanie Place." (TAC ¶¶ 16-17, 37, 40.) Plaintiff also seeks to add his "family members and friends, including minor children," who were "subject to violence, excessive force, the use of lethal weapons,' and assaulted on "June 28, 2012" pursuant to "another fraudulent arrest warrant" issued for Plaintiff. (*Id.* ¶¶ 33, 38.) Pro se litigants, however, as Plaintiff is well-aware, *see* March 23, 1012 Order [ECF Doc. No. 4] at 4 n.1, have no authority to represent anyone other than themselves. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 1997) (non-attorney plaintiff may not attempt to pursue claim on behalf of others in a representative capacity).

they rely on a judge's determination of probable cause. *See also Alvarado v. Bratton*, 299 Fed. Appx. 740, 742 (9th Cir. 2008) (recognizing *Baker* rule that a detention of three days pursuant to a valid warrant does not and could not amount to a deprivation of liberty without due process of law).

Second, to the extent Plaintiff alleges OPD Officers Does 1-100 and other unidentified OPD SWAT Team 10 Officers denied him "due process" and his "equal rights as an African American" by "surrounding the residence," "assist[ing]" the bail enforcement agents, "allowing an illegal break-in," and authorizing the agents' use of "excessive" force to take him into custody and "kidnap" him (TAC ¶¶ 25, 27, 59), the Court finds these claims lack both an "arguable basis in law," and the "factual content" necessary to permit a reasonable inference that these purported parties, more than 100 unidentified police officials, could each be held individually liable for any specific constitutional wrong. *Iqbal*, 556 U.S. at 678; *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (a complaint fails to state a claim and is subject to dismissal if it either "lack[s] a cognizable legal theory" or is devoid of "sufficient facts [to support] ... a cognizable legal theory.") (citation omitted). Indeed, Plaintiff's Third Amended Complaint, like his previous pleadings, continues to offer only "naked assertions," which while serious, consist only of "labels and conclusions," which are simply not sufficient to "nudge [his] claims" of a vast racial conspiracy involving hundreds of unidentified law enforcement officers, county prosecutors, an FBI agent, and bail bondsmen over three separate municipal jurisdictions, "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678, 680 (citations omitted).

Third, as Plaintiff's previous attempts to sue Defendants Dumanis and Stephan failed, *see* March 26, 2013 Order [ECF Doc. No. 18] at 4-5, so do his repeated attempts to seek damages from them, as well as from Defendant Buie, for "[a] state prosecuting attorney enjoys absolute immunity from liability under § 1983 for [her] conduct in 'pursuing a criminal prosecution' insofar as [s]he acts within[her] role as an 'advocate for the State' and [her] actions are 'intimately associated with the judicial phase of the criminal process.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1068 (9th Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430–31

///

(1976)). "[T]he act of procuring a bench warrant is one 'intimately associated with the judicial phase of the criminal process,' as it is normally part of the initiation of criminal proceedings." *Waggy v. Spokane County*, 594 F.3d 707, 713 (9th Cir. 2010) (quoting *Imbler*, 424 U.S. at 430).

Fourth, to the extent Plaintiff seeks to sue Drew Bedell, who is described only as an FBI Agent, for "taking a statement," "receiving" photos from the "incident that took place on June 30, 2011 at 4781 Stephanie Place, Oceanside," and "stonewalling an investigation about public corruption with all Defendants," (TAC ¶ 46), the Court finds absolutely no basis in either fact or law to support any plausible claim upon which either § 1983 or § 1985 relief could be granted. *Iqbal*, 556 U.S. at 678 (while Rule 8 does not require "detailed factual allegations," it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). And while "federal officials acting under federal authority are generally not considered to be state actors," but may be liable under § 1983 if they are found to have "conspired with or acted in concert with state officials to some substantial degree," *Cabrera v. Martin*, 973 F.3d 735, 741 (9th Cir. 1992), Plaintiff's "naked assertion" of stonewalling is simply insufficient to nudge his claims of conspiracy "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678, 680 (citing *Twombly*, 550 U.S. at 557, 570); *see also Lacey*, 693 F.3d at 937 (requiring a plaintiff alleging conspiracy to "define the scope of any conspiracy ..., what role [a conspirator] had, or when or how the conspiracy operated."). Indeed, in *Twombly*, the Supreme Court found similar assertions of an "unlawful agreement" to be a mere "legal conclusion" not entitled to the assumption of truth. 550 U.S. at 555.

Fifth, the Court finds Plaintiff's allegations against "Vista Sheriff's Deputies Does 1-100," similarly sensational and similarly "unadorned." *Iqbal*, 662 U.S. at 678. While Plaintiff claims he was arrested on June 30, 2011after a "raid" and "standoff" at his parents' residence, 4781 Stephanie Place, in Oceanside, California, throughout the course of his pleading, he also seeks to sue one hundred unidentified deputies from the City of Vista, California, for participating in yet another "raid that took place on or about June 30, 2011 at 312 Salina Court in Vista, CA." (TAC at 48). No further details are provided; therefore, these claims fail to plausibly suggest any entitlement to relief. *Id.* at 679.

### D.    18 U.S.C. § 2331 / Domestic Terrorism (Patriot Act)

Finally, to the extent Plaintiff contends *all* named Defendants committed acts of domestic terrorism in violation of 18 U.S.C. § 2331 (TAC 1, 64-65), he also fails to state a claim upon which relief can be granted because federal criminal statutes do not create a private civil right of action. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming dismissal of claims brought under criminal provisions that "provide[d] no basis for civil remedy"); *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) ("[C]riminal statutes ... do not give rise to civil liability."); *Linde v. Arab Bank*, 353 F. Supp. 2d 327, 331 (E.D.N.Y. 2004) (specifically finding no private right of action under 18 U.S.C. § 2331 et seq.).

For all these reasons, the Court finds Plaintiff's Third Amended Complaint fails to state a claim upon which relief may be granted, and seeks monetary damages against defendants who are immune. Therefore, like his previous pleadings, Plaintiff's Third Amended Complaint pleading must also be dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2). *See Lopez*, 203 F.3d at 1126-27.

### III.    CONCLUSION AND ORDER

Good cause appearing therefor, IT IS HEREBY ORDERED that:

1) Plaintiff's Third Amended Complaint [ECF Doc. No. 20] is DISMISSED as to all parties and claims pursuant to 28 U.S.C. § 1915(e)(2); and

2) Because further amendment would be futile, leave to amend is DENIED. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (denial of a leave to amend is not an abuse of discretion where further amendment would be futile); *see also Robinson v. California Bd. of Prison Terms*, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998) ("Since plaintiff has not, and cannot, state a claim containing an arguable basis in law, this action should be dismissed without leave to amend; any amendment would be futile.") (citing *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996)).

3) The Court further CERTIFIES that an IFP appeal from this Order of dismissal would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United*

/ / /

1 *States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir. 1977) (indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

The Clerk shall close the file.

DATED: October 11, 2013

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge